## Shepherd et al. v. Miller et al.

(Decided February 2, 1932.)

H. H. RAMEY for appellants.

W. R. PRATER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN— Reversing.

On May 1, 1916, Wilson Shepherd and his wife entered into a contract whereby, for a stated consideration, they agreed to convey to G. D. Miller all of the minerals under their land. including the oil and gas, reserving a one-eighth part as royalty. On March 27, 1927, this agreement was carried out by Shepherd and his wife

executing and delivering to Miller a deed for said minerals, including the oil and gas, reserving the one-eighth part as provided for in the contract. In this transaction, Miller was acting as trustee for himself and for Frank Enslow and W. H. Cunningham, all of whom are now appellees, and Judge D. W. Gardner, who has since died, his widow, Candace F. Gardner, also an appellee taking his place. Wilson Shepherd died on October 8, 1917. The evidence shows that the negotiations leading up to the execution of the deed and contract were conducted for Miller and his associates by Judge Gardner. In April, 1926, this suit was brought by the heirs of Wilson Shepherd to recover from the appellees the oil and gas rights under the land their father had, by the deed mentioned conveyed to Miller, the suit being grounded on the claim that the contract and deed by mutual mistake or fraud had incorporated therein the oil and gas under the land as well as the other minerals, whereas, in truth, the oil and gas were to be excluded. The defenses of the appellees to this suit were, first, a traverse; secondly, a plea of the five-year statute of limitations; and, thirdly, that they were bona fide purchasers for value without notice of appellants' alleged equity. Proof was then taken which most satisfactorily disclosed that, at the time the contract and deed were entered into by Wilson Shepherd, Judge Gardner was engaged in taking a number of like contracts and deeds in the neighborhood for himself and his associates, the present appellees. At that time, the oil and gas rights were not thought to be of any particular value. The main purpose of these contracts and deeds was to acquire the rights to the coal in this region. The contract which Wilson Shepherd executed was written on a printed form in which the necessary blanks were filled as required. In the printed portion of the form, the words "oil and gas" as well as coal and other minerals appeared. Shepherd demurred to signing away the oil and gas unless his neighbors in selling their minerals, would also include them, and Judge Gardner promised him that, in the event he could not get Shepherd's neighbors to convey their oil and gas, as well as their other minerals, he would release to Shepherd the oil and gas rights covered by the contract and later by the deed Shepherd executed. The evidence further disclosed that a number of the neighbors incorporated the oil and gas rights in their deeds under similar promises that had been made to Shepherd and that a number of the neigh-

bors refused to convey their oil and gas rights, and that later when complaint was made by Shepherd's neighbors who had conveyed their oil and gas rights about the others not having done so, Gardner's assignee or grantee on Gardner's procurement voluntarily released to these neighbors the oil and gas rights they had included in their deeds. Shepherd had long since been dead at this time, and, so far as this record shows, no request was made by his heirs of Judge Gardner to release the oil and gas rights covered by Wilson Shepherd's deed. Indeed, Shepherd's heirs do not seem actually to have known about this matter until shortly before this suit was brought, and at a time when Judge Gardner too had long since died. Before submission of the case, the appellants filed an amended petition to conform to the proof which had been taken and in which they sought an enforcement of Judge Gardner's agreement concerning the release of these oil and gas rights. On submission of the case, the court dismissed appellants' petition and amended petition, and they have appealed.

Of course, the court's action in dismissing appellants' claim for reformation was correct and must be sustained, as the evidence overwhelmingly establishes that the incorporation of the oil and gas rights in the original deed and contract was made through no mistake or oversight, but was the actual understanding of the parties subject to Judge Gardner's promise to reconvey or release such oil and gas rights in the event he was unable to secure like conveyances or grants or leases from all the neighborhood. Appellants' amended petition was utterly inconsistent with the original petition, and was in fact an abandonment of any effort to reform the contract and deed. But we are of opinion that in dismissing the amended petition, the court erred. In the case of Huff v. Fuller, 197 Ky. 119, 246 S. W. 149, 150, the facts were these: V. H. and E. H. Fuller executed and delivered to Ira C. Huff an oil and gas lease on a tract of land in Powell county. The lease was in the usual form, with the usual nominal cash consideration and the usual obligations to explore for the oil and gas or pay stipulated rentals. Huff organized a corporation to which he transferred this lease in return for most of its stock. The corporation later sold all of its property, including this lease to third parties, and then the Fullers sued Huff asserting that the lease was delivered to Huff on the

agreement that he was to sell it and out of the proceeds was to pay the Fullers a stated sum, but, if he transferred the lease to a corporation, he was to pay the Fullers for the lease in stock and cash. In holding that the Fullers could enforce this agreement, we said:

"But, whether the parol agreement sued on in this case should be considered as a part of the consideration for the lease, and provable under the stated rule, is not necessary to be determined, since there can be no doubt that the parol testimony relied on is competent to create a parol trust under which defendant took and held the lease, and for the violation of which he would be liable to the cestuis que trust, who were the plaintiffs in this case, if there existed such trust. The principle of law determined in the case of Turner v. Newberry, 166 Ky. 196, 179 S. W. 23, fully sustains the right with reference to the establishment and enforcement of a trust created by parol, although the trust grows out of a transaction the terms of which are stated in a writing with no reference therein to the trust. In that case the vendor executed a deed to the vendee absolute in form, and recited that the consideration for the land conveyed was paid and how it had been paid. The vendee claimed that under his absolute deed he could hold the land without performing the terms of the collateral parol trust. The vendee sued him to recover a judgment for an amount alleged to be due under the terms of the parol trust, and the trial court gave a peremptory instruction in favor of defendant on the ground that there was no plea of fraud or mistake in the execution of the deed, and that without such a plea the consideration expressed could not be impeached. But this court reversed the judgment, and, after referring to the rule prevailing in this jurisdiction, that it is competent to prove by oral evidence that a deed absolute on its face was intended by the parties as a mortgage or security for indebtedness, the opinion said:

" 'The recited consideration of a conveyance may be impeached, without allegation of fraud or mistake, and that too, by parol testimony. Ky. Stats., sec. 470, subsec. 7; Stamper v. Cornett [Ky.] 121 S. W. 623; Ky. Stats., sec. 472. Of course, in the instant case, it was not shown that the conveyance

from Turner to Newberry was in fact intended to be a mortgage; it was not intended that the land should be held by Newberry as security, but that he should sell it and pay to Turner whatever the sale realized over and above the amounts which Newberry had paid for Turner. The transaction was an oral trust.'

"In the case of Woolfolk v. Earle, 40 S. W. 247, 19 Ky. Law Rep. 343, the facts were that a stepdaughter conveyed a tract of land to her stepfather by absolute deed with a recited nominal consideration of $1. The land was afterwards sold, and a creditor of the stepfather attempted to subject a part of the proceeds, which action was resisted on the ground that the deed was executed upon the parol trust that the stepfather would sell the land and reinvest the proceeds in a home for his wife, the mother of his grantor, in the state of Kansas, where the stepdaughter resided, and to which the mother and her husband contemplated moving. The trial court denied the oral trust upon the ground that the terms of the deed, being absolute, 'could not be varied or contradicted by oral proof.' The judgment was reversed by this Court, and in the opinion it is said:

" 'We think, however, that the motives of the parties to the deed, and the reasons which induced it, as well as the real consideration for its execution, may be shown, and this proof in no way varies or contradicts the recitals of the deed.'

"It would be no difficult task to support the two propositions with foreign opinions and text-writers, but we deem it unnecessary."

See, also, Farley v. Gibson, 235 Ky. 164, 30 S. W. (2d) 876, 877.

We are of the opinion that the principle of the Huff Case, supra, is controlling here. Miller, through Gardner, his agent and associate, obtained the oil and gas rights under Shepherd's land under the distinct agreement, clearly and convincingly established, that such rights would be reconveyed or released to Shepherd if like rights were not obtained from the neighbors when they sold their rights to Gardner and Miller and their associates. Such agreement, under the Huff

Case, created a parol trust of these oil and gas rights on the part of Miller which Shepherd, and now his heirs, have the right to enforce. The appellees are not bona fide purchasers for value, since Gardner was their agent in the procurement of these various mineral deeds; the naked legal title being taken in the name of Miller for convenience and later on June 1, 1923, conveyed to them. At least so long as Miller held the title he held it under a continuing and subsisting trust. The case of Huff v. Byers, 209 Ky. 375, 272 S. W. 897, is conclusive of that proposition. This being true, as long as Miller held the title, limitations did not run against the enforcement of the trust here asserted. Kentucky Statutes, sec. 2543. And, even if it be conceded that after the transfer of the legal title to the appellees, they held these oil and gas rights only as constructive trustees, suit was brought to charge them with this trust within five years from such transfer to them. Hence the statute of limitations was no bar to the prosecution of appellees' claim.

For the reasons hereinbefore set out, the judgment of the lower court is reversed, with instructions to enter a judgment requiring the appellees to release, relinquish, and reconvey to appellants the oil and gas rights set out in the deed of Shepherd to Miller.

Whole court sitting.